TRULINCS 79509510 - LIPMAN, JONATHAN - Unit: LOS-H-S

---

Jonathan Lipman
American Citizen
Federal Detainee 79509-510
   Metropolitan Detention Center Los Angeles
   P.O. Box 531500
   Los Angeles CA, 90053
Telephone: N/A - Cant even get the Federal Government Detention Center to give me legal phone calls
Email: N/A - Cant even get the Federal Government Detention Center to consistently deliver my legal mail

Pro-Se Plaintiff
Jonathan Lipman

|  FILED  |
|---|
| CLERK, U.S. DISTRICT COURT |
| APR 23 2025 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: rsm   DEPUTY |

United States District Court
For the Central District of California

| | |
|---|---|
| Jonathan Lipman, Plaintiff | No: 2:24-cv-07950-SPG |
| v. | Brief regarding governments violations of confidential legal work product and attorney client privileged communications |
| United States of America;<br>United States District Court for the Central District of California [Judge Aenlle-Rocha];<br>United States Attorneys Office for the Central District of California;<br>Federal Bureau of Prisons - Metropolitan Detention Center LA [D.J. Silva, Acting Warden] | April 16, 2025<br><br>Trial Date: Unscheduled |

Petitioner Jonathan Lipman, by pro-se and through the postal service of a federal government detention center, hereby files this brief regarding the Federal Governments violations of confidential legal work product and attorney client privileged communications.

Dated: April 16, 2025

                                               _Jonathan Lipman_
                                               Jonathan Lipman
                                               Plaintiff Pro-Se

TRULINCS 79509510 - LIPMAN, JONATHAN - Unit: LOS-H-S

---

1.) On March 27 2024 Metropolitan Detention Center seized and searched Defendant Lipmans 11 legal binders that contained confidential legal work product and attorney client privileged information for cases 2:23-cr-00491-FLA and 2:24-cv-07950-SPG.
A.) These binders were closed by straps. No paper fell out of them for "in-plain view" reviewing.
B.) The binders were clearly labeled "legal documents" or "legal".
C.) These legal binders contained trial strategy, legal work product, and documents related potential affirmative defenses.
D.) Metropolitan Detention Center Los Angeles Staff has admitted to the removal and retention of an unknown number of documents from these legal binders, approximating without confirmation or reason to believe the governments tally, to be about 20 documents.
E.) The government has yet to stipulate to its probable cause to search these documents or which governmental authority ordered the seizure and search of these documents.
F.) These binders were clearly labeled by their contents: "case law", "discovery", "legal drafts", "handwritten notes", etc. Such labeling allowed the government easy specificity of search. The five days the government had these binders in its possession was more than enough time to review and copy privileged information and confidential legal work product.
G.) The binders contained 18 months of defendants casework. Some of these documents were handwritten; others written on a typewriter; others were written on the only word processor system available to detainees: the inmate email system available on a shared computer with an attached printer in the prisons day room.
i) Use of the inmate email system to create documents is a necessity. The law library typewriter is only made available to defendant for an average of less than two hours per week due to religious services occuring during defendants law library time and lockdowns cancelling law library hours. The copy machine is nonfunctional for months at a time because it is out of toner or the commissary is out of copy cards. Making copies of documents not written on the email program is impossible at times.
H.) Many documents were individually marked with the header "Attorney client privileged" or "legal document". Some documents had multiple copies because it is cheaper and more time effective to print out an email draft and edit documents by hand and pen, than work exclusively on the email program.
I.) There is no way to confirm beyond a reasonable doubt which documents the government read, retained, and/or photocopied despite any claims the government may make about conducting a limited scope of search.
J.) Beginning in October of 2023 in handwritten documents submitted to then counsel the Federal Public Defenders Office, and continuing in court documents and motions submitted to the District Court in December of 2023, February of 2024, and in an attempted court order to Metropolitan Detention Center by the District court, defendant requested a laptop for confidential case work on trial due to the possibility of governmental violations of defendants right to confidentiality and for easier casework. The defendant also requested more law library time, access to copying daily upon request, access to a typewriter, and access to blank paper. These requests were denied and ignored further necessitating defendants use of the email system as a word processor, and enabling the governments potentially unfettered reviews of legal work product without future accounting of governments access to these documents through digital storage of access timestamps.
K.) The damage to defendants defense is unknown and can never be known. The damage to the perception of fairness in defendants criminal trial is irreparable. The damage to central principles of the legal justice system are severe.

2.) Violation of Attorney Client privileged communications.
A.) Beginning at a date no later than January 23, 2025, the government began reviewing emails clearly marked "attorney client privileged" that were sent from defendant to his attorneys.
i) There is a reasonable suspicion that the governments review of privileged communications began much earlier, in January or February of 2024, following Defendants attempt to send by U.S. Postal mail a writ of Habeas Corpus with claims of violations of Constitutional Rights by the government and Metropolitan Detention Center to the District Court (Judge Aennle-Rocha).
B.) Metropolitan Detention Center has reacted, or some higher government authority has ordered Metropolitan Detention Center to respond, to the contents of "legal mail" or attorney-client privileged communications on at least three occassions.
i) In September of 2024, Defendant sent legal mail to the U.S. Attorneys Office and FBI with details that should be revealed under seal for defendants safety. Within hours of the detention center mail room receiving this "legal mail", Defendant Lipman was warned by prison staff about sending communications critical of the detention center's handling of a crime.
ii.) On the evening of March 18th, 2025 defendant sent an attorney client privileged email to his Attorneys with details that should be revealed under seal and that also was critical of the detention center and the attorneys office. The next morning the SIS lieutenant pulled the defendant out of his unit and told him he should reconsider the content of his emails or face potential consequences, including housing in the "specialized housing unit" where the defendant would be restricted from sending mail or emails or making phone calls.
iii.) On the evening of March 26th, 2025 defendant sent attorney client privileged communications to his attorneys with details that should be revealed under seal for defendants safety. On the morning of March 27th defendants attorneys responded to this communication. No more than 4 hours later defendants legal binders containing attorney client privileged communications and confidential legal work product were siezed, apparently in response to the content of communications to attorneys.
C.) The damage to defendants defense is unknown. The extent of the governments violation of defendants privileged communications is unknown. The advantage the government received from violating attorney client privilege cannot be known.

TRULINCS 79509510 - LIPMAN, JONATHAN - Unit: LOS-H-S

---

1.) On March 27 2024 Metropolitan Detention Center seized and searched Defendant Lipmans 11 legal binders that contained confidential legal work product and attorney client privileged information for cases 2:23-cr-00491-FLA and 2:24-cv-07950-SPG.
A.) These binders were closed by straps. No paper fell out of them for "in-plain view" reviewing.
B.) The binders were clearly labeled "legal documents" or "legal".
C.) These legal binders contained trial strategy, legal work product, and documents related potential affirmative defenses.
D.) Metropolitan Detention Center Los Angeles Staff has admitted to the removal and retention of an unknown number of documents from these legal binders, approximating without confirmation or reason to believe the governments tally, to be about 20 documents.
E.) The government has yet to stipulate to its probable cause to search these documents or which governmental authority ordered the seizure and search of these documents.
F.) These binders were clearly labeled by their contents: "case law", "discovery", "legal drafts", "handwritten notes", etc. Such labeling allowed the government easy specificity of search. The five days the government had these binders in its possession was more than enough time to review and copy privileged information and confidential legal work product.
G.) The binders contained 18 months of defendants casework. Some of these documents were handwritten; others written on a typewriter; others were written on the only word processor system available to detainees: the inmate email system available on a shared computer with an attached printer in the prisons day room.
i) Use of the inmate email system to create documents is a necessity. The law library typewriter is only made available to defendant for an average of less than two hours per week due to religious services occuring during defendants law library time and lockdowns cancelling law library hours. The copy machine is nonfunctional for months at a time because it is out of toner or the commissary is out of copy cards. Making copies of documents not written on the email program is impossible at times.
H.) Many documents were individually marked with the header "Attorney client privileged" or "legal document". Some documents had multiple copies because it is cheaper and more time effective to print out an email draft and edit documents by hand and pen, than work exclusively on the email program.
I.) There is no way to confirm beyond a reasonable doubt which documents the government read, retained, and/or photocopied despite any claims the government may make about conducting a limited scope of search.
J.) Beginning in October of 2023 in handwritten documents submitted to then counsel the Federal Public Defenders Office, and continuing in court documents and motions submitted to the District Court in December of 2023, February of 2024, and in an attempted court order to Metropolitan Detention Center by the District court, defendant requested a laptop for confidential case work on trial due to the possibility of governmental violations of defendants right to confidentiality and for easier casework. The defendant also requested more law library time, access to copying daily upon request, access to a typewriter, and access to blank paper. These requests were denied and ignored further necessitating defendants use of the email system as a word processor, and enabling the governments potentially unfettered reviews of legal work product without future accounting of governments access to these documents through digital storage of access timestamps.
K.) The damage to defendants defense is unknown and can never be known. The damage to the perception of fairness in defendants criminal trial is irreparable. The damage to central principles of the legal justice system are severe.

2.) Violation of Attorney Client privileged communications.
A.) Beginning at a date no later than January 23, 2025, the government began reviewing emails clearly marked "attorney client privileged" that were sent from defendant to his attorneys.
i) There is a reasonable suspicion that the governments review of privileged communications began much earlier, in January or February of 2024, following Defendants attempt to send by U.S. Postal mail a writ of Habeas Corpus with claims of violations of Constitutional Rights by the government and Metropolitan Detention Center to the District Court (Judge Aennle-Rocha).
B.) Metropolitan Detention Center has reacted, or some higher government authority has ordered Metropolitan Detention Center to respond, to the contents of "legal mail" or attorney-client privileged communications on at least three occassions.
i) In September of 2024, Defendant sent legal mail to the U.S. Attorneys Office and FBI with details that should be revealed under seal for defendants safety. Within hours of the detention center mail room receiving this "legal mail", Defendant Lipman was warned by prison staff about sending communications critical of the detention center's handling of a crime.
ii.) On the evening of March 18th, 2025 defendant sent an attorney client privileged email to his Attorneys with details that should be revealed under seal and that also was critical of the detention center and the attorneys office. The next morning the SIS lieutenant pulled the defendant out of his unit and told him he should reconsider the content of his emails or face potential consequences, including housing in the "specialized housing unit" where the defendant would be restricted from sending mail or emails or making phone calls.
iii.) On the evening of March 26th, 2025 defendant sent attorney client privileged communications to his attorneys with details that should be revealed under seal for defendants safety. On the morning of March 27th defendants attorneys responded to this communication. No more than 4 hours later defendants legal binders containing attorney client privileged communications and confidential legal work product were siezed, apparently in response to the content of communications to attorneys.
C.) The damage to defendants defense is unknown. The extent of the governments violation of defendants privileged communications is unknown. The advantage the government received from violating attorney client privilege cannot be known.

TRULINCS 79509510 - LIPMAN, JONATHAN - Unit: LOS-H-S           2:23-CR-00491-FLA

----

FROM: 79509510
TO: The District Court of the United States of America
SUBJECT: Another Violation of rights the District court will condone
DATE: 04/15/2025 12:21:54 PM

This is attorney client privileged and confidential legal work product for the district courts eyes only*
The federal governments Bureau of Prisons and Attorneys Office will read it anyway.
The District Court will let them get away with it.
x
x
x
x
X
x
x
x
Which branch of the US government has been reading my privileged communications to my attorneys?

Who asked Metropolitan Detention Center Los Angeles to sieze my legal binders and legal work product?

Who gave the government permission to read privileged emails to my attorneys and my confidential legal notes?

Do District Court Judges in the United States of America think Americans have any due process rights or Civil rights at all?

**Envelope 1:**

Jonathan Lipman 79509-510
Metropolitan Detention Center Los Angeles
P.O. Box 531500
Los Angeles, Ca 90053

Postmark: LOS ANGELES CA 900, 18 APR 2025 PM 12 L
90012-456420

Judge Acille Rocha
1st Street Courthouse
350 W 1st Street
Courtroom 6B 6th Floor
Los Angeles Ca 90012

Stamp: CLERK U.S. DISTRICT COURT, APR 23 2025, CENTRAL DISTRICT OF CALIFORNIA, BY DEPUTY

**Envelope 2:**

Jonathan Lipman 79509-510
Metropolitan Detention Center Los Angeles
P.O. Box 531500
Los Angeles, CA 90053

Postmark: LOS ANGELES CA 900, 18 APR 2025 PM 4 L
90012-456450

Judge Sherilyn Garnett
1st Street Courthouse
350 W 1st Street
Los Angeles CA 90012

Stamp: CLERK U.S. DISTRICT COURT, APR 23 2025, CENTRAL DISTRICT OF CALIFORNIA, DEPUTY

Kenns c1/1c/2025

Gumus 4/16/2025